UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:11-cr-00267-MMD-CWH |
|---|---|
| Plaintiff, | ORDER |
| v. | (Def.'s Motion for New Trial – dkt. no. 102) |
| HEIDI HAISCHER, | |
| Defendant. | |

**I.  SUMMARY**

Before the Court is Defendant Heidi Haischer's Motion to Set Aside Verdict and Request for New Trial (dkt. no. 102).  For the reasons set forth below, Haischer's Motion is denied.

**II.  BACKGROUND**

On July 20, 2011, the United States filed an indictment against Haischer alleging that she perpetrated a mortgage fraud scheme in which she, along with her ex-boyfriend, Kelly Nunes, submitted false loan applications to obtain financing for two properties located in Las Vegas, Nevada.  The Indictment alleged that Mr. Nunes recruited Ms. Haischer to act as a straw buyer for the purchase of these two properties, and that they both completed mortgage loan applications containing materially false and fraudulent representations and material omissions.  (Dkt. no. 1.)

On November 9, 2012, a jury found Haischer guilty of one count of wire fraud and one count of conspiracy to commit wire fraud.  (Dkt. no. 101.)  On November 26, 2012,

Haischer timely filed the instant Motion seeking to set aside that verdict and requesting a new trial. (Dkt. no. 102.) The government opposes the Motion. (Dkt. no. 103.)

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although determining whether to grant a motion for a new trial is left to the district court's discretion, "it should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation and internal quotation marks omitted). Moreover, the defendant bears the burden of persuasion. *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989). Such an extraordinary remedy is appropriate, for example, when a court makes an erroneous ruling during the trial and that, but for that erroneous ruling, the outcome of the trial would have been more favorable to the defendant. *See United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978).

## IV.  DISCUSSION

Haischer requests a new trial on three grounds: (1) inappropriate exclusion of admissible evidence relating to domestic abuse; (2) inappropriate exclusion of evidence demonstrating lender negligence; and (3) the improper re-opening of the government's case-in-chief to prove identity. The Court reviews each ground separately.

### A.  Exclusion of Domestic Abuse Evidence

Haischer argues that the Court improperly excluded evidence of domestic abuse and violence, including photographs showing her physical injuries resulting from that abuse. In order to demonstrate why this argument fails, a recounting of the relevant events leading up to this evidence's exclusion is in order.

#### 1.  Timeline of Events

On October 10, 2012, the United States filed a pre-trial Motion in Limine to exclude the introduction of any duress evidence. (Dkt. no. 58.) Haischer opposed the Motion arguing that an early determination of this evidence's admissibility was

premature. (Dkt. no. 70.) The Court disagreed, but ruled that Haischer may introduce evidence of duress only upon a pre-trial proffer of evidence. (Dkt. no. 81.) The Court set an evidentiary hearing for November 5, 2012, to determine whether Haischer can make a *prima facie* showing of duress. (*Id.* at 7.)

At the November 5, 2012, hearing, Haischer's counsel represented to the Court that he intended to present a duress defense. (Dkt. no. 84.) Haischer called Penny Haischer, her twin sister, to testify about the domestic abuse, as well as Doris Jean Mitchell. (*Id.*) The Court took the matter under advisement, and issued its ruling denying the government's Motion to exclude the evidence on November 6, 2012. (Dkt. no. 88.)

After the close of the government's case on November 9, 2012, Haischer's counsel began his opening argument. During argument, he informed the jury that duress is not at issue in the case, but that evidence of abuse will be revealed that demonstrates Haischer's state of mind. Upon objection, Haischer's counsel informed the Court and the government at sidebar that he did not intend to pursue the duress defense. At sidebar, and again during a break in trial, the Court restated its November 6, 2012, ruling and ordered that Haischer could introduce evidence of domestic abuse only in connection with a duress defense because the prejudicial effect of the evidence admitted on a non-duress theory of relevance substantially outweighs its probative value. Haischer objected, arguing that it is nonetheless relevant and highly probative. Haischer bases her request for a new trial on this objection, arguing that admission of domestic violence evidence is not limited to cases involving defense of duress, and that she is entitled to a new trial as a result.

### 2. Theories of Relevance

Haischer essentially argues that evidence of domestic abuse may be relevant on two distinct theories of admissibility. The Court admitted this evidence under the first theory, but excluded it under the second theory per Fed. R. Evid. 403.

///

1 | Haischer could have argued (and did initially argue) that she intended to commit the illegal acts only because she was under threat of harm as shown by the evidence of domestic abuse. This theory of relevance falls under the rubric of a duress defense — an affirmative defense that a defendant deploys that acts as a legally acceptable justification for the commission of an illegal act. *See United States v. Homick*, 964 F.2d 899, 905 (9th Cir. 1992) (discussing elements of duress defense in the context of domestic violence). Like self-defense, or the defense of necessity, a duress defense excuses a criminal act because it would be manifestly unjust to hold accountable an actor who performed the act only because she was under a palpable threat of harm. *See United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975) (defining duress). Had Haischer pursued this theory, her claim for admissibility would have been on solid ground. As explained in the Court's November 6, 2012, Order, the probative value of duress evidence is high, and outweighs any prejudicial impact of that evidence. But as Haischer declined to pursue this theory mid-trial, she must fall back on the second theory, which led the Court to correctly exclude the evidence.

The second theory of relevance is not an affirmative defense. Rather, this theory attempts to negate the essential element of intent required for a conviction of conspiracy or fraud. Haischer was entitled to present evidence, to the extent such evidence existed, that she did not intend to defraud banks. This theory requires that she show her sincere belief that her acts were lawful such that she could not have held the requisite intent to commit fraud or conspiracy. It is not clear, however, that evidence of domestic abuse is probative on this point. In order to prove her sincere intent, she might conceivably have argued that she believed Kelly Nunes' representations of the scheme's legality because of his emotional and physical domination of her. This theory of relevance thus requires a factfinder to conclude that Kelly Nunes' abuse of Haischer created an atmosphere where Haischer was more likely to believe that Nunes' scheme was lawful notwithstanding Haischer's experience gained from working in the mortgage industry and from obtaining

///

a prior mortgage loan.[1] This is less probative than if offered on a duress theory, for it would have required the jury to make a number of inferential leaps and to ignore other relevant evidence. Haischer would have been forced to reduce the size of the logical leaps the jury was required to overcome on this second theory of admissibility, greatly diminishing the probative value, if any, of the evidence of abuse.

The relatively low probative value of the evidence of abuse under the second theory is far outweighed by the factors list under Fed. R. Evid. 403. While these forms of prejudice existed with respect to the first theory of admissibility, the diminished probative value on the non-duress theory tips the scales in favor of exclusion.[2] Allowing evidence of abuse carried the real risk of inappropriately influencing the jury by eliciting sympathy for Haischer without providing more than nominal probative value. Second, admitting evidence on a non-duress theory risked creating a mini-trial and siphoning the Court's time into litigating the presence of abuse, which ultimately carries little probative weight for the determination of Haischer's guilt. Lastly, admission of this evidence could have confused the jury into believing that domestic abuse exonerates Haischer – a fact that may be true for duress, but not on a non-duress theory. In sum, since Haischer could not demonstrate why the evidence's probative value is not substantially outweighed by its prejudicial impact, the Court denied Haischer's requests to admit evidence of abuse. Moreover, the Court properly instructed the jury to disregard evidence of abuse that had been admitted to support Haischer's duress defense before she abandoned it at the

---

[1] At trial, Haischer argued that she did not question Kelly Nunes and did what he told her to do because of the nature of their relationship.

[2] This is particularly true for the photographic evidence, which may be more prejudicial than ordinary testimonial evidence offered by a witness. *See United States v. Brady*, 579 F.2d 1121, 1129 (9th Cir. 1978) (explaining that unless a photograph is "of such gruesome and horrifying nature that its probative value is outweighed by the danger of inflaming the jury," the power to exclude graphic photographs rests squarely within the court's discretion). While Haischer is correct that a court cannot deny the introduction of any corporeal photograph as a matter of course, and that courts in other cases admitted photographs more graphic than the ones at issue here, the Court correctly determined that in the context of this case, the photographs should be excluded under Fed. R. Evid. 403, even if offered in connection with Haischer's duress defense.

1 close of the government's case.  Consequently, the Court did not err in excluding this
2 evidence, and Haischer has not met her burden to demonstrate the need for a new trial.

### B. Exclusion of Lender Negligence Evidence

Haischer also argues that the Court improperly excluded all evidence of lender negligence.  This argument fails for the reasons set forth in the Court's October 24, 2012, Order.  (*See* dkt. no. 81 at 5-6.)  Haischer suggests that the Court's previous order misunderstood the relevance of lender negligence to Haischer's defense.  Instead of viewing it as an affirmative defense, Haischer argues, the Court ought to have looked at such evidence as going to the existence of an intent to defraud.  But that is precisely the theory of relevance that the law proscribes introducing such evidence for.

This Court has previously held that loose lending practices are relevant only to challenge the materiality of a misrepresentation, an essential element of a fraud conviction.  *See, e.g.*, *United States v. Wagner*, No. 2:10-cr-399, 2012 WL 4482403, at *1-2 (D. Nev. Sep. 26, 2012).  What Haischer cannot do, however, is argue that the banks' loose lending practices are probative as to her intent to defraud.  The intent to defraud requires not that Haischer's misrepresentations *actually* deceived or influenced the lender, but that Haischer knew her representations to the bank were untrue and that she made them in order to deceive or cheat.  *See United States v. Rashid*, 383 F.3d 769, 778-79 (8th Cir. 2004), *judgment vacated on other grounds by Abu Nahia v. United States*, 546 U.S. 803 (2005).  Put differently, whether or not lenders negligently or loosely lent money to customers lends no probative weight to whether Haischer knew that her misrepresentations were deceptive.  So long as she knew of their falsity and knew the lenders would be deceived as to their truth, Haischer intended to defraud irrespective of whether the lender would have loaned her the money otherwise. Accordingly, the Court did not err in refusing to admit evidence of loose lending practices and instructing the jury on lender negligence, and Haischer has not met her burden to seek a new trial on this ground.

///

### C. Identification of Haischer

Lastly, Haischer makes the incredible argument that a new trial ought to be held because the government failed to properly identify her as the charged individual during its case-in-chief. In light of the fact that the Court allowed the government to re-open its case-in-chief to correct the government's inadvertent and technical omission, the Court will not vacate a jury's considered conviction of Haischer.

"A motion for judgment of acquittal should be granted only if, viewing the evidence in the light most favorable to the government, no rational trier of fact could find beyond a reasonable doubt that the defendant is the person who committed the charged crime." *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995) (citing *United States v. Lucas*, 963 F.2d 243, 247 (9th Cir. 1992)). The government correctly points out that an in-court identification of a defendant is not a requirement for conviction. *Alexander*, 48 F.3d at 1490. "For example, an in-court identification is not necessary when the defendant's attorney himself identifies his client at trial." *Id.* "Moreover, the failure of any witnesses to point out that the wrong man had been brought to trial can be eloquent and sufficient proof of identity." *Id.* (internal quotations and citation omitted). Here, Haischer's counsel identified himself as Heidi Haischer's attorney at trial. No government or defense witnesses contested Haischer's identity. Haischer herself spoke up to correct the mispronunciation of her name by a witness during the government's case-in-chief. And most importantly, the Court properly exercised its discretion to reopen the government's case-in-chief for the express purpose of identifying Haischer as the defendant. *See United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir. 1985) ("Reopening is often permitted to supply some technical requirement such as the location of a crime – needed to establish venue – or to supply some detail overlooked by inadvertence."). Haischer has not demonstrated any kind of prejudice resulting from the reopening of the government's case. In light of the ample evidence at trial that supported Haischer's identification, as well as the government's identification after

///

reopening, Haischer's request for a new trial on this ground borders on the frivolous, and is denied.

**V.     CONCLUSION**

Accordingly, IT IS ORDERED that Defendant Heidi Haischer's Motion to Set Aside Verdict and Request for New Trial (dkt. no. 102) is DENIED.

DATED THIS 3rd day of January 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE