UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>    v.<br>HEIDI HAISCHER,<br><br>                Defendant. | Case No. 2:11-cr-00267-MMD-CWH<br><br>ORDER<br><br>(Def.'s Second Motion for New Trial – dkt. no. 122) |

**I.    SUMMARY**

Following an evidentiary hearing held on May 6, 2013, the Court denied Defendant Heidi Haischer's Second Motion for New Trial (dkt. no. 122). (*See* dkt. no. 138.) This Order explains the Court's decision.

**II.    BACKGROUND**

On July 20, 2011, the United States filed an indictment against Haischer alleging that she perpetrated a mortgage fraud scheme in which she, along with her ex-boyfriend, Kelly Nunes, submitted false loan applications to obtain financing for two properties located in Las Vegas, Nevada. The Indictment alleged that Nunes recruited Haischer to act as a straw buyer for the purchase of these two properties, and that they both completed mortgage loan applications containing materially false and fraudulent representations and material omissions. (Dkt. no. 1.)

On November 9, 2012, a jury found Haischer guilty of one count of wire fraud and one count of conspiracy to commit wire fraud. (Dkt. no. 101.) On November 26, 2012,

Haischer timely filed her first motion for a new trial seeking to set aside that verdict and requesting a new trial. (Dkt. no. 102.) The Court denied Haischer's motion. (*See* dkt. no. 107.)

Haischer's sentencing was scheduled for Monday, April 15, 2013. On the Friday before the sentencing hearing, more than three months after her first motion was denied and after several continuances of the sentencing hearing, Haischer filed this second Motion for New Trial based on the report that was attached to Defendant's Sentencing Memorandum filed on April 1, 2013. (*See* dkt. nos. 114 & 122.) The Court rescheduled the sentencing hearing for May 6, 2013. (*See* dkt. no. 126.) The government opposes Haischer's Motion. (*See* dkt. no. 127.)

**III.    LEGAL STANDARD**

A new trial pursuant to Fed. R. Crim. P. 33 must be filed within three (3) years of the verdict if based on newly discovered evidence, *see* Fed. R. Crim. P. 33(b)(1), or within fourteen (14) days of the verdict if brought on other grounds, *see* Fed. R. Crim. P. 33(b)(2). A defendant seeking a new trial upon the basis of newly discovered evidence under Fed. R. Crim P. 33(b) must prove five factors:

> (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates that the defendant would probably be acquitted in a new trial.

*United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (citing *United States v. Kulczyk*, 931 F.2d 542, 548 (9th Cir. 1991)). In rare cases, newly discovered impeachment evidence can merit a new trial if it (1) is "so powerful that, if it were believed by the trier of fact, it could render the witness' testimony totally incredible," and (2) that "witness' testimony [was] uncorroborated and provided the only evidence of an essential element of the government case." *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992).

///

///

## IV. DISCUSSION

Haischer requests a new trial based on a report provided by Dr. Thomas Kinsora, a neuropsychologist, created in preparation for sentencing. According to Haischer, the report was created "[f]ollowing two days of testing and examination," and concluded that Haischer "suffers from significant impairments in cognitive functioning." (Dkt. no. 122 at 2.) This overstates Dr. Kinsora's conclusion as offered in his report and testimony at the evidentiary hearing. To quote Dr. Kinsora, he has "significant doubts that she [Ms. Haischer] has the capacity to develop the legal knowledge-based necessary to be a loan officer." (Dkt. no. 114 at 12.) He further states that Defendant "tends to be overwhelmed when materials become complex" and as a result, she "tends to defer to others to help her understand material." *Id.* at 11. Dr Kinsora reiterated this opinion during his testimony at the evidentiary hearing, concluding that he "would not be surprised if she did little more than sign the documents put in front of her (which is what most of us do)." *Id.* at 12. This is in fact consistent with Defendant's testimony. Defendant testified that she did not read any of the documents she signed because she trusted Mr. Nunes.

Haischer nevertheless claims that this new evidence "directly refute[s] the government's theory that she could understand the details and technicalities of mortgage lending, that she would have read and understood what she was signing." (*Id.*) The government opposes the Motion, arguing that this new evidence is cumulative, would not have resulted in acquittal, and that Haischer was not diligent in obtaining this new evidence. The Court agrees with the government.

Although the evidence is indeed new, and may be material to the trial, the remaining requirements for a new trial have not been established.[1] First, this evidence is cumulative. Haischer argued at trial that her limited cognitive ability precluded her from forming the intent required for a fraud conviction. Doris Mitchell, James Barger, and

---

[1] Although the report was based on facts largely available to the jury at trial, the fact that it is presented by an expert and provides expert conclusions based on those facts renders this evidence "new" for consideration on a Rule 33 motion.

3

Penny Haischer all testified that Haischer was incapable of understanding the complexities of the loan applications she signed. Sean Claggett, the attorney who represented Haischer in her lawsuit against Craig Kelley involving the two properties in the Indictment, testified that Haischer does not seem very bright and often relied on Mr. Nunes. Haischer testified she did not review what she signed and trusted Mr. Nunes to take care of the loans. The government presented evidence that Haischer understood her actions as fraudulent, and that her experience working in the industry (where she earned $96,000 working as a mortgage agent) and general experience of having bought a house demonstrated her ability to appreciate the wrongfulness of her conduct. In fact, the government argued that the excuses Haischer made — that she did not understand the mortgage business, did not read the documents she signed, and did not know how to even use a computer — were not credible and did not make sense. The government further argued that one does not have to be sophisticated or smart to know not to lie on loan applications. The jury, apprised of this conflict in evidence, decided against Haischer, and rejected her cognitive deficiency defense. Dr. Kinsora's report merely adds more of the same, based on information from Haischer which was presented through her testimony at trial,[2] to the arguments properly discredited by the jury.

Haischer makes much of the willful ignorance instruction, arguing that Dr. Kinsora's report demonstrates that Haischer's actions and behavioral patterns could not support deliberately ignoring the consequences of her fraud. The Court disagrees. Dr. Kinsora's report does not establish that Haischer is without the capacity to deliberately ignore the consequences of her actions, but merely provides reasons for why she might have so acted. Dr. Kinsora wrote that Haischer may be "easily outmaneuvered" in

---

[2] Some of the facts underlying Dr. Kinsora's opinion were challenged by the government at trial. For example, Dr. Kinsora noted that Haischer did not own a computer. At trial, on cross-examination, Haischer admitted that she had testified in her deposition in her civil lawsuit against Craig Kelley that she owned a computer at her house. During the evidentiary hearing, Dr. Kinsora also testified that Haischer told him she committed perjury at that deposition. Nevertheless, in convicting Haischer, the jury resolved this credibility issue against Haischer.

conversation, is "over-trusting," and "will likely defer to the opponent in a discussion." (Dkt. no. 114 at 9.) He explains that "her personality style, the relationship that she was in, her verbal reasoning skills, and her reading level" explain why she *might* have done "little more than sign the documents put in front of her." (*Id.* at 10.) These are explanations for why Haischer might deliberately ignore the consequences of her actions, not a conclusion that she was without the capacity to act deliberately. Indeed, this conclusion supports the government's central thesis in this case: that one need not be very smart to lie on a loan application.

Second, Haischer was not diligent in bringing Dr. Kinsora's report to the Court's attention. The Court does not credit the Motion's representation that defense counsel became concerned about Haischer's limited cognitive ability in preparation for sentencing, since Haischer's defense at trial relied exclusively on her purported diminished mental capacity. This was not a recently discovered issue, but one that animated pretrial and trial proceedings up through Haischer's eventual conviction. The Court does not consider diligent this failure to present all available evidence.

Further, the Court received this Motion on the Friday before the scheduled sentencing hearing on Monday. Haischer was convicted almost six (6) months before this Motion was filed. Sentencing was originally scheduled for March 4, 2013. (*See* dkt. no. 95.) By stipulation, the Court continued the sentencing hearing to April 3, 2013. (*See* dkt. nos. 109 and 110.) The Court thereafter rescheduled the hearing to April 8, 2013. (*See* dkt. no. 111.) A second stipulation to continue the hearing was filed on April 2, 2013, and the hearing was consequently continued to April 15, 2013. (*See* dkt. nos. 117 and 118.) This second Motion for a new trial was filed more than three (3) months after Haischer brought her first motion for a new trial. According to Haischer's filing, Dr. Kinsora produced his report to defense counsel on March 29, 2013 — two weeks before this Motion was filed. Although Haischer submitted Dr. Kinsora's report with her April 1, 2013, sentencing memorandum (*see* dkt. nos. 113 and 114), she waited until April 12, 2013, to bring this Motion. Instead of promptly requesting a continuance of the

sentencing hearing, Haischer filed her second motion without warning. The Court thus finds that Haischer was not diligent in bringing this new evidence to the Court's attention.

Lastly, Haischer has not demonstrated that Dr. Kinsora's report would probably result in an acquittal. Contrary to Haischer's argument, the government's theory that Haischer appreciated Nunes' wrongful conduct was contradicted at trial. The jury heard Haischer's "unintelligence" defense from numerous sources, and chose not to credit any of them. Dr. Kinsora's report was merely cumulative evidence that the jury considered in other forms, and thus likely would not have resulted in acquittal.

## V. CONCLUSION

Haischer has not demonstrated that Dr. Kinsora's report meets the five (5) requirements set forth in Rule 33(b). Since the evidence is cumulative, would not likely result in acquittal, and was brought in an untimely fashion, IT IS HEREBY ORDERED that Defendant Heidi Haischer's Motion for a New Trial (dkt. no. 122) is DENIED.

DATED THIS 13th day of May 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE