UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br>    v.<br><br>HEIDI HAISCHER,<br><br>                   Defendant. | Case No. 2:11-cr-00267-MMD-CWH<br><br>ORDER<br><br>(Motion to Enter Judgment of Conviction – dkt. no. 153) |

**I.    SUMMARY**

This Order addresses the government's request for imposition of restitution award to MortgageIT pursuant to the Mandatory Victims Restitution Act. The Court had deferred entry of the judgment of conviction to permit evidence and briefing on whether the Court should order restitution. Having considered the multiple briefs relating to the government's restitution request (dkt. nos. 112, 113, 121,131, 136, 137, 153, 160, 161 and 162) and the arguments presented at the sentencing hearing held on May 6, 2013, the Court finds the government has established by a preponderance of the evidence that restitution in the amount of $107,078.22 must be awarded to MortgageIT. The judgment of conviction will accordingly be issued to reflect this restitution award.

**II.    RELEVANT BACKGROUND AND FACTS**

On November 9, 2012, a jury found Defendant Heidi Haischer guilty of one count of wire fraud and one count of conspiracy to commit wire fraud. (Dkt. no. 101.) The fraudulent conduct involved submission of false loan applications to obtain four loans on two properties. The government seeks restitution on one of the loans, a second

mortgage on the property located at Elche Court in Las Vegas ("the Loan"). The evidence at trial shows that the Loan was for the amount of $107,200.00 and was originated by MortgageIT ("MIT").

As support for its restitution request, the government submitted three affidavits from an MIT Vice President, John Caruso. In these affidavits, Mr. Caruso explained his position with MIT, his authority to execute documents on behalf of MIT, and his knowledge about the Loan based on his review of records relating to the Loan as maintained by MIT and its parent company, Deutsche Bank ("DB"), in the normal course of business. (Dkt. nos. 112-3, 136-1 & 153-1.) Mr. Caruso attested that MIT, a subsidiary of DB, originated the Loan and the Loan was "wholly owned" by MIT, "meaning that it has never been sold to another lender or securitized." (Dkt. no. 136-1; 153-1.) Mr. Caruso testified that the balance of the Loan as of April 30, 2013, was $107,078.22. (*Id.*) He further testified that the Loan had been "charged off" or written off as a loss due to the foreclosure of the first lien on the Elche Court property in November 2008, which extinguished MIT's second lien and left it with an unsecured note. (Dkt. no. 153-1.) MIT was unable to collect on the unsecured note because Haischer filed for bankruptcy and was discharged in 2009. (*Id.*)

**III.   DISCUSSION**

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, mandates that a court order a defendant to pay restitution to a victim of certain specified offenses. "A victim 'is a person who has suffered a loss caused by the specific conduct that is the basis of the offense conviction.'" *United States v. Peterson,* 538 F.3d 1064, 1074 (9th Cir. 2008) (*quoting United States v. Gamma Tech Indus. Inc.*, 265 F.3d 917, 927 (9th Cir. 2001)). The victim "is entitled to be made whole." *United States v. Yeung*, 672 F.3d 594, 601 (9th Cir. 2012). Where, as here, the fraudulent scheme involved obtaining real estate financing from lenders, the Court determines the restitution amount by taking "the unpaid principal balance due on the fraudulent loan, less the value of the real property collateral as of the date the direct lender took control of the property." *Id.* The

government has the burden of establishing by a preponderance of the evidence the victim's entitlement to the amount of restitution requested. *Id.* While "district courts possess a 'degree of flexibility in accounting for a victim's complete losses," an award of restitution must be supported by "an adequate evidentiary basis." *Id.* at 602.

Defendants raised three primary objections to an award of restitution: (1) there is inadequate evidentiary support for MIT's claim as a victim; (2) the Loan was discharged in bankruptcy; and (3) awarding the balance of the Loan without accounting for any tax benefit to MIT would result in a windfall.[1] The Court has considered these objections and finds that based on the information presented in Mr. Caruso's affidavits and the evidence presented at trial, there is an adequate evidentiary basis supporting an award of restitution to MIT in the amount equal to the balance of the Loan.

Defendant relies on the following to challenge the government's assertion that MIT was a victim because it did not sell or securitize the Loan and : (1) Mr. Caruso's April 16, 2012, affidavit asserted that "the loan was held by the mortgage backed securities division of Deutsche Bank"; (2) the "screen shot" attached to the government's Sentencing Memorandum (dkt. no. 112-2) provided a CUSIP number which defense counsel contends only applied to a loan which has been securitized; (3) MERS' records attached to Defendant's reply brief (dkt. no. 160-1) show that the investor of the Loan was HSBC Bank USA, not MIT; and (4) trial testimony of Patricia Forcier, Assistant Vice-President of Deutsche Bank, shows that DB did not hold the Loan.

The Court agrees with the government that evidence presented in an affidavit is sufficient to support an award of restitution. *See Peterson,* 538 F.3d at 1077 (finding that the district court properly relied on information presented in a declaration of a forensic auditor showing the specific loss amounts in awarding restitution). Moreover,

---

[1] Defendant raised other objections in their briefs leading up to the sentencing hearing held on May 6, 2013. These objections all relate to Defendant's claim of inadequate evidentiary support for an award of restitution to MIT. The Court has also considered these objections.

any unrelated proceedings against DB and MIT cannot impugn MIT's status as a victim of Defendant's fraudulent conduct.

Mr. Caruso's affidavits adequately establish the foundational requirements necessary to support MIT's claim of a loss in the amount of the balance of the Loan. The assertions in Mr. Caruso's affidavits demonstrate that MIT originated the Loan (consistent with the evidence presented at trial), did not sell or securitize the Loan, and wrote off the Loan as a loss. Even accepting defense counsel's contention relating to the significance of a CUSIP number and the information in what appears to be MERS' MIN report, they are insufficient to contradict MIT's assertions via Mr. Caruso's affidavits that MIT did not sell or securitize the Loan. As for Patricia Forcier's testimony, Ms. Forcier testified in response to Defendant's trial counsel's question about payments on the Loan that she did not know the answer. She went on to testify that "We don't have that mortgage right now, we've only had to repurchase the first." (Dkt. no. 161.) This testimony does not contradict Mr. Caruso's testimony presented in his affidavits which directly establishes proof of MIT's loss as a victim. Indeed, Ms. Forcier's statement that DB did not hold "the mortgage right now" is consistent with Mr. Caruso's assertion that MIT wrote off the Loan after Defendant's bankruptcy in 2009.

Defendant contends that MIT cannot seek to collect the debt as part of a restitution award because the debt was discharged in her bankruptcy proceedings. This argument fails, as the provisions of the MVRA apply "[n]otwithstanding any other provision of law." 18 U.S.C. § 3663A(a)(1). That a debt subject to a restitution order was earlier discharged in bankruptcy does not prevent the application of MVRA's mandatory restitution provisions. *See United States v. Pipkin*, 541 F. Supp. 2d 1068, 1072 (N.D. Iowa 2008) (express terms of MVRA require restitution notwithstanding earlier discharge of the subject indebtedness in bankruptcy); *see also United States v. Hyde,* 497 F.3d 103, 107–08 (1st Cir. 2007) (holding that the MVRA allows the government to enforce a restitution order against proceeds from the sale of a home notwithstanding the Bankruptcy Code's homestead exemption). Haischer cites to the

1 | rule, inapplicable here, that the Bankruptcy Code "precludes the use of criminal actions to collect debts which have been discharged in bankruptcy." *In re Daulton*, 966 F.2d 1025, 1028 (6th Cir. 1992). But as in the case here, "[t]he mere fact that a debt has been discharged in bankruptcy does not preclude a criminal action from proceeding based on the debtor's alleged criminal conduct in relation to the debt." *Id.* Accordingly, Haischer's newly raised argument concerning her prior bankruptcy discharge cannot defeat a mandatory restitution award.

The Court also rejects Defendant's argument that the restitution amount should reflect any tax benefits received by MIT. While MIT wrote off the Loan, there is no evidence that it received any tax benefits. Moreover, any windfall to MIT would be too speculative at this point and would depend on the tax benefit received, the payment of restitution actually made by Haischer, and the tax consequences to MIT from the payment after having claimed a write off. For these reasons, the Court declines to reduce the restitution amount to reflect any tax benefits that MIT may have received from the write off.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendant pay restitution in the amount of $107,078.22 to MortgageIT. Defendant is jointly and severally liable with Kelly Nunes in Case No. 2:10-cr-00356-LDG-VCF to pay this amount.

DATED THIS 9th day of July 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE